## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

American Male & Company, d/b/a
American Male.

        Plaintiff,

v.

Owners Insurance Company.

        Defendant.

No. 21 CV 02595

Honorable Nancy L. Maldonado

### MEMORANDUM OPINION AND ORDER

This case involves commercial insurance coverage for a business affected by the COVID-19 pandemic. Plaintiff American Male & Company d/b/a American Male owns and operates a clothing store in Oswego, Illinois, which was forced to suspend its operations due to pandemic-related government closure orders. Plaintiff alleges that the Defendant, Owners Insurance Company ("Owners"), wrongfully denied its insurance claims for lost business income it incurred as a result of the closure orders. Owners has moved to dismiss the Amended Complaint, primarily arguing that Plaintiff has failed to allege "direct physical loss or damage to" its property as is required by the insurance policy at issue. (Dkt. 11.).[1]  For the reasons stated in this opinion, in light of controlling Seventh Circuit precedent, Owner's motion to dismiss is granted and the case is dismissed without prejudice. Plaintiff shall have 28 days from the date of this order to file a motion for leave to file a second amended complaint, if it believes that it can remedy the deficiencies outlined herein.

### Background

Plaintiff American Male is an Illinois corporation that owns and operates a clothing store located in Oswego, Illinois. (Dkt. 1 at ¶¶ 1-2). Defendant Owners is a Michigan-based corporation engaged in the business of selling insurance policies, including policies to commercial entities such as retail stores like Plaintiff.[2] Owners issued an insurance policy to Plaintiff (Policy Number

---

[1]  Referenced page numbers are taken from the CM/ECF header.

[2]  American Male originally filed suit in the Circuit Court of Kendall County, Illinois, and named as the defendant Auto-Owners Insurance Company. (Dkt. 1-1). Auto-Owners Insurance Company removed the suit to this Court and moved to dismiss the original complaint, arguing in part that it was not the correct entity that should be named as the defendant, because the policy at issue had been issued by another company, Owners Insurance Company. Plaintiff filed an Amended Complaint naming Owners as the defendant instead. (Dkt. 10.) New summons was not issued and Owners was never formally substituted in the case caption, but Owners indicates it nonetheless responded to the Amended Complaint with the instant motion to dismiss "in the interest of getting the right party promptly dismissed." (Dkt. 12 at 1 n.1.)

1

49-836-171-02, hereafter "the Policy") for a period between April 15, 2019 through April 15, 2020, which was renewed through April 15, 2021. (Dkt. 10-1).[3]

## A. Relevant Policy provisions

The Policy provides Plaintiff's business with Businessowners Special Property Coverage, the relevant provision which states that:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Dkt. 10-1 at 92.). The Policy indicates that "Covered Cause of Loss" means "risks of direct physical loss unless the loss is: a. Excluded in Section B., Exclusions; or b. Limited in Paragraph A.4, Limitations; that follow." *Id.* at 93.

Plaintiff's Policy also includes a "Business Income and Extra Expense" endorsement which modifies the coverage provided under the Businessowners Special Property Coverage form. *Id.* at 30. This form provides that Owners will pay for loss of Business Income and necessary Extra Expenses under certain circumstances:

> f. Business Income
>
> . . . [W]e will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises . . .
>
> Business Income means the: (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll.
>
> g. Extra Expense
>
> . . . [W]e will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises….
>
> Extra Expense means expense incurred: (1) To avoid or minimize the suspension of business and to continue "operations": (a) At the

---

[3] American Male attaches the Policy to the Amended Complaint, which makes it part of the pleading. *See* Fed. R. Civ. P. 10(c).

2

> described premises; or (b) At replacement premises . . . ; (2) To minimize the suspension of business if you cannot continue "operations"; (3) (a) To repair or replace any property; or (b) To research, replace or restore the lost information on damaged valuable papers and records . . .

*Id.* "Operations" under the Business Income provision are defined as "your business activities occurring at the described premises." *Id.* at 111. "Period of restoration" as used in the Extra Expense provision is defined as "the period of time that . . . Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises." *Id.*

The Policy also includes a "Limited Fungi or Bacteria Coverage" endorsement, which provides in relevant part that Owners "will pay for loss or damage by 'fungi', wet rot, dry rot or bacteria." *Id.* at 44. The endorsement goes on to state that "the term loss or damage means: "direct physical loss or damage to Coverage property . . ." *Id.*

**B. Government shut-down orders and Plaintiff's insurance claim**

On March 9, 2020, Illinois Governor J.B. Pritzker declared a state-wide disaster in response to the escalating COVID-19 pandemic and began to issue a series of executive orders. (Dkt. 10 at ¶ 20.) On March 15, 2020, Governor Pritzker issued an order closing all restaurants, bars, and movie theaters to the public. *Id.* A few days later on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close. *Id.* Plaintiff states that it is considered a "non-essential" business and, as a result of the March 20, 2020 order, it was forced to shut down its in-store business operations, resulting in substantial lost revenues. *Id.* at ¶¶ 20-23.

According to Plaintiff, "[t]he continuous presence of the coronavirus, in or around Plaintiff's Insured property rendered the premises unsafe and unfit for its intended use and therefore caused physical property damage or loss of property at Plaintiff's premises" *Id.* at ¶ 72. Plaintiff alleges that the closure order "prohibited the public from accessing Plaintiff's business, thereby causing the necessary suspension of its operations and triggering coverage as Plaintiff suffered a direct physical loss of property at its premises," and that it suffered "substantial Business Income losses and incurred Extra Expenses." *Id.* at ¶ 75.

Following the implementation of the closure orders, Plaintiff submitted an insurance claim to Owners requesting coverage for the business interruptions. *Id.* at ¶ 76. On around July 14, 2020 2020, Owners denied Plaintiff's claim. *Id.* at ¶ 77. Plaintiff sent Owners a request to reconsider its decision, which it responded to on March 24, 2021 indicating it was not changing its previous determination. Plaintiff proceeded to file the instant suit on May 13, 2021. *Id.* at ¶ 78.

Plaintiff now seek (1) a declaratory judgment regarding the scope of the Policy and Owner's obligation to pay, (2) damages for breach of contract, and (3) a statutory penalty for bad faith denial of insurance under 215 ILCS 5/155. *Id.* ¶¶ 64-80, 160-163, 244-249.

**Legal Standards**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.") (internal quotations omitted) A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a court must interpret an insurance policy as part of resolving a motion to dismiss, the standard rules of contract interpretation apply: the "primary objective is to ascertain and give effect to the intent of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777–78 (7th Cir. 2015) (internal quotation and citations omitted). The parties agree that the policies are governed by Illinois law, and in Illinois, insurance policy construction is a question of law properly determined by the Court. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998); *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill.2d 303, 856 N.E. 2d 338, 342 (2006). "[I]f the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 930 N.E.2d 1011, 1017 (2010) (internal quotation and citation omitted). However, a policy provision is not ambiguous solely because the parties disagree about its interpretation. *Founders Ins. Co., v. Munoz*, 237 Ill.2d 424, 930 N.E. 2d 999, 1004 (2010).

**Discussion**

Owners' primary contention in support of dismissal is that Plaintiff has failed to allege any "direct physical loss of or damage" to its property, which Owners maintains is required for coverage under the Policy. (Dkt. 12 at 1, 8-9.) Owners argues that "direct physical loss or damage" requires "tangible, structural damage to the property itself," or a "distinct, demonstrable, physical alteration," and that Plaintiff's allegations about the government closure orders and the "presence of the coronavirus" in and around Plaintiffs' premises do not satisfy this requirement. *Id.* at 9-10, 12-13.

Plaintiff argues on the other hand that physical damage or tangible alteration to the property is not required, because the Policy provides coverage for "physical loss of *or* damage to the Coverage property," and according to Plaintiff the use of the disjunctive "or" between "physical

4

loss" and "damage" demonstrates that physical loss of a property is a distinct concept from physical damage to the property. (Dkt. 14 at 4-7.) Thus, Plaintiff argues that the term "physical loss" provides broader coverage for its property beyond just tangible physical damage, and it claims that its alleged loss of use of its business due to the presence of the coronavirus and the government shut-down orders constitutes a "physical loss." *Id* at 1, 5-6.

Unfortunately for Plaintiff, their interpretation of the phrase "direct physical loss" has been foreclosed by the Seventh Circuit's decision in *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021).[4] In *Sandy Point,* a consolidated opinion, the plaintiffs were three businesses who, like Plaintiff here, were required to close or dramatically limit their business operations as a result of Governor Pritzker's closure orders issued in response to the COVID-19 pandemic. *Id* at 329. The plaintiffs' insurance policies in *Sandy Point* provided coverage for "direct physical loss" to their property, and included "Business Income" and "Extra Expense" provisions similar to those in the Policy here. *Id.* The Seventh Circuit rejected the plaintiffs' theory that a partial "loss of use, unaccompanied by any physical alteration to property, may constitute 'direct physical loss'" for the purpose of their insurance policies. *Id*. at 329–30, 334. The court considered the same textual argument that Plaintiff makes in this case about the policies' use of the disjunctive "or" in the terms "physical loss or damage," and expressly rejected the suggestion that the disjunctive phrase means that loss need not have a physical aspect. *Id*. at 332 (explaining that because "[t]he phrase is 'direct physical loss or damage," "[w]hatever 'loss' means, it must be physical in nature"). The court reviewed the policy language as a whole, including similar provisions to those at issue here such as the "period of restoration" language that is part of the "Extra Expense" coverage, and concluded that "[t]he Policy is replete with textual clues that reinforce the conclusion that 'direct physical loss' requires a physical alteration to property." *Id*. at 333.

Turning to the question of whether COVID-19 and the government closure orders constituted a "direct physical loss," the Seventh Circuit rejected the suggestion that the mere presence of the virus, or the partial government closure orders, physically altered any of the plaintiffs' properties within the meaning of their policies. *Id.* at 335. The court contrasted the presence of the COVID-19 virus with cases involving insurance coverage for termite infestations, asbestos, and gas infiltration. *Id.* at 333-335 (citations omitted). The court noted that in the case of termites and asbestos there is unquestionably a "physical alteration" to the property beyond merely a loss of use. *Id.* at 333. The court recognized that cases involving gas infiltration were "a little closer to the mark," because gas infiltration might cause "loss of use without any accompanying physical alteration." *Id.* at 334. However, the court explained that the gas infiltration cases involved "more than a diminished ability to use the property," rather the gas was "so severe that it led to complete dispossession—something easily characterized as a 'direct physical loss.'" *Id.* ("the courts [in these cases] concluded that the contamination made the premises 'uninhabitable,' and 'unfit for normal human occupancy.' In other words, the gas infiltration made physical entry impossible, thus barring all uses by all persons."). The court found that COVID-19 was

---

[4] *Sandy Point* was issued after Owners filed its motion to dismiss, and was first raised by Owners when it filed a notice of supplemental authority after the decision was issued. (Dkt. 24.) Plaintiff did not file a response to the notice of supplemental authority nor seek leave to file any supplemental brief addressing the *Sandy Point* decision.

distinguishable from these circumstances, because although the plaintiffs may have lost their "preferred" or "intended" use of their property, there was no physical alteration caused by COVID-19, nor had it caused a "complete physical dispossession" of their property. *Id.* at 335 ("Sandy Point at all times remained able to perform some dental work, and nothing precluded it from using the property for some other non-dental purpose consistent with the closure orders."). The court thus concluded that the plaintiffs had failed to adequately allege a physical alteration or its equivalent, which meant they had failed to allege a "direct physical loss" under the applicable policy. *Id.* [5]

*Sandy Point's* holding has been repeatedly affirmed in subsequent decisions by the Seventh Circuit. *See, e.g., ABC Diamonds Inc. v. Hartford Cas. Ins. Co.*, No. 22-1026, 2022 WL 1830692, at *1 (7th Cir. June 3, 2022) ("this court has repeatedly held that 'direct physical loss' means tangible, physical alteration to property, not merely loss of use."); *see also E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 551 (7th Cir. 2022) (applying holding of *Sandy Point* to affirm dismissal where plaintiff failed to allege a physical alteration of its property); *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 420 (7th Cir. 2022) (same). And following the Seventh Circuit's ruling in *Sandy Point*, judges in this District have dismissed similar COVID-19 insurance actions involving the same or similar policy language requiring "direct physical loss," including in at least one other case involving an essentially identical policy issued by Owners. *See, e.g., Carlisle Banquets Inc. v. Owners Ins. Co.*, 591 F. Supp. 3d 333, 338 (N.D. Ill. 2022) (relying on *Sandy Point* to dismiss businesses' claims against Owners, because they did not allege a "tangible, concrete harm to their physical properties," and their allegation of "loss of use due to the pandemic does not meet the physicality requirement" for coverage under their policies); *see also Valley Lo Club Ass'n, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-04790, 2022 WL 2712534, at *4 (N.D. Ill. July 5, 2022) ("The Policy in this case, like the insurance policies in *Sandy Point* requires a physical alteration to the property. Valley Lo fails to allege any physical alteration of the property, so there is no coverage under the Policy."); *Q Excelsior Italia Srl v. Zurich Am. Ins. Co.*, No. 21 C 1166, 2022 WL 17093361, at *3 (N.D. Ill. Nov. 21, 2022) (noting that plaintiff's claim that "loss of use of its properties due to the COVID-19 shutdown orders is sufficient to plead 'direct physical loss'" fails under *Sandy Point*).

*Sandy Point* and its progeny thus require that the Court dismiss Plaintiff's complaint. As in *Sandy Point*, the Policy here requires "direct physical loss" as a prerequisite to trigger coverage, including specifically under the "Business Income" and "Extra Expense" coverage provisions. Despite Plaintiff's extensive arguments to the contrary, "direct physical loss" according to the Seventh Circuit, means a physical alteration to the property or complete physical dispossession. *See Sandy Point Dental, P.C.*, 20 F.4th at 329-330, 334. Plaintiff here has failed to allege any physical change or alteration to its property, or that it was completely dispossessed of its property

---

[5] The plaintiffs in Sandy Point also argued that they should be allowed to amend their complaint to add new allegations that "COVID-19 physically attaches itself to the physical premises, and thereby deprive[s] plaintiff of the use of said premises." *Id.* But the court found the proposed amendment did not cure the deficiencies in the complaint, because "[e]ven if the virus was present *and* physically attached itself to Sandy Point's premises, Sandy Point does not allege that the virus *altered* the physical structures to which it attached, and there is no reason to think that it could have done so." *Id.* (noting that "deadly or not, [the virus] may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days.").

due to COVID-19 and the government closure orders. Instead, Plaintiff alleges the continuous presence of the coronavirus amongst the public and around its premises, along with the government closure orders, rendered the premises unsafe and deprived plaintiffs of the intended use of its business. (*See* Dkt. 1 at ¶¶ 71-72.) But *Sandy Point* held such allegations are insufficient to establish a "direct physical loss." *Sandy Point Dental, P.C.*, 20 F.4th at. at 335.

Plaintiff raises several other arguments against dismissal, but each does not save Plaintiff's claims. Plaintiff argues that its interpretation of "direct physical loss" is supported by the language of the "Limited Fungi or Bacteria Coverage," endorsement in the Policy, which provides coverage for "direct physical loss or damage" to covered property caused by fungi, wet rot, dry rot or bacteria. (Dkt. 14 at 8). Plaintiff argues that the language of this provision demonstrates that Owners intended to provide coverage for COVID-19 because there is no discernable difference between a virus such as COVID-19 and bacteria, and it "would be impossible to satisfactorily explain to American Male why it paid premiums for coverage that included direct physical loss or damage by bacteria but not a virus." *Id.* Setting aside any material differences between bacteria and viruses, the endorsement contains the same requirement as the Policy for "direct physical loss" to the property for coverage to apply. As explained above, *Sandy Point* makes clear that "direct physical loss" requires a "physical alteration" to the property. Thus, irrespective of whether it is due to bacteria or a virus, a tangible change to the property or something akin to complete physical dispossession is still required for coverage to apply, and mere loss of use as Plaintiff alleges is not sufficient. *See Valley Lo Club Ass'n, Inc.*, 2022 WL 2712534, at *4 (rejecting plaintiff's contention that a similar provision providing coverage for "Fungi, Wet Rot, Dry Rot, and Bacteria," demonstrated that the insurer intended to cover COVID-19 related economic losses, because the provision used the same definition of "loss" as in the policy which, under *Sandy Point,* required a physical alteration, which the plaintiff had not alleged.) Further, the Court notes that the endorsement states that it "only applies when the 'fungi', wet rot, dry rot or bacteria are the result of a 'specified cause of loss' other than fire or lightning." (Dkt. 10-1 at 44). "Specified Causes of Loss" under the policy means "Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *Id.* at 112. Plaintiff has not alleged that its loss of use of its property was the result of any of these "specified causes of loss," thus its attempt to point to the endorsement for coverage fails.

Plaintiff separately argues that it has alleged "physical loss" to its property because it made several alterations to its premises in an attempt to mitigate the damage from COVID-19. (Dkt. 14 at 12). Specifically, Plaintiff argues that it made changes such as installing germ sanitation stations and plexiglass shields, removing racks of clothing, and closing most dressing rooms. *Id.* Plaintiff suggests that these physical alterations to its property fall under the definition of "physical loss or damage" to covered property under the Policy. *Id.*

The Court first notes that Plaintiff does not reference any of these purported alterations to the property in the complaint, and only references them in its response brief. But even if Plaintiff had properly alleged such alterations, courts have repeatedly rejected the argument that such voluntary changes made to properties in response to the COVID-19 pandemic constitute a

"physical loss." *See Byberry Servs. & Sols., LLC v. Mt. Hawley Ins. Co.*, No. 20-CV-03379, 2021 WL 3033612, at *2 (N.D. Ill. July 19, 2021) (rejecting plaintiff's argument that its alterations to its property, which included installing plexiglass, removing furniture, and limiting access to group exercise rooms, qualified as a physical loss triggering coverage); *G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, 548 F. Supp. 3d 688, 695 (N.D. Ill. 2021) (plaintiffs' changes to its property, which included moving furniture and installing plexiglass, did not qualify as physical loss, "for even assuming that the changes are 'physical,' they are neither physical *losses* nor physical *damage*. The studio remains in perfect repair, having suffered no loss or damage.") (emphasis in original); *see also Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021) (rejecting the argument that "'repairs' to the property, including installing special air filters, plexiglass partitions and protection shields," qualify as a physical loss), *aff'd*, F.4th 303, 307 (7th Cir. 2021). Plaintiff's voluntary mitigation measures to its property constitute neither *losses* nor *damage* to its premises, and therefore such alterations would not provide for coverage even if they had been properly alleged.

In sum, the Court concludes that Plaintiff has failed to allege "direct physical loss" as is required by the Policy, which necessitates dismissal of their declaratory judgment claim. As Plaintiff has not established a valid claim for coverage under any of the policies, its claims for breach of contract and bad faith denial of insurance must also fail. *See Naperville Dental Specialists & Gen. Oral Health Care, P.C. v. Cincinnati Ins. Co.*, No. 21 C 4671, 2022 WL 3684637, at *3 (N.D. Ill. Aug. 25, 2022) (citing *Rosebud Rest., Inc. v. Regent Ins. Co.*, No. 20 C 5526, 2022 WL 2669522, at *6 (N.D. Ill. July 11, 2022)).

Finally, there is the question of whether to dismiss with prejudice or without prejudice and allow Plaintiff leave to amend. The Court has significant doubts as to whether Plaintiff can plausibly plead any "direct physical loss" such that its case could survive a motion to dismiss, given the unequivocal language from *Sandy Point*. Further, Plaintiff has already voluntarily amended its complaint once in response to a prior motion to dismiss. On the other hand, Plaintiff has requested leave to file an amended complaint in response to a motion to dismiss so that it may include more specific allegations. The Court ultimately finds it appropriate to give Plaintiff a final chance to attempt to amend the complaint. Therefore, the dismissal will be without prejudice, and if Plaintiff believes it can cure the deficiencies raised in this Order through an amended pleading, it may, within 28 days of this order, file a motion seeking leave to file an amended complaint. The motion must attach a redline of the complaint showing any changes, and must be accompanied by a brief identifying how the proposed amendment would cure the identified deficiencies. If Plaintiff does not file a motion seeking leave to amend by the deadline, this dismissal will automatically convert to a dismissal with prejudice.

## Conclusion

For all the foregoing reasons, Owners' motion to dismiss (Dkt. 11) is granted and the case is dismissed without prejudice. Plaintiff shall have 28 days from the date of this order to file a motion for leave to file a second amended complaint, if it believes that it can remedy the

deficiencies outlined herein. If Plaintiff does not file a motion seeking leave to amend by the deadline, this dismissal will automatically convert to a dismissal with prejudice.


ENTERED:     3/27/23


_____
Nancy L. Maldonado
United States District Court Judge

9